IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRASANNA KUMAR VEMULA, and NISHA SHIVRAMBHAI CHAUDHARI, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary, Department of Homeland Security; TODD LYONS, Acting Director of the Immigration and Customs Enforcement, each in their official capacity and not individually; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Case No. 25-cv- |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, PRASANNA KUMAR VEMULA and NISHA SHIVRAMBHAI CHAUDHARI, for their Complaint against Defendants KRISTI NOEM, Secretary, Department of Homeland Security; TODD LYONS, Acting Director of the Immigration and Customs Enforcement, each in their official capacity and not individually; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, state and alleges as follows:

### PARTIES

1. Plaintiff PRASANNA KUMAR VEMULA ("Prasanna") is a native and citizen of India who currently resides in Illinois. Since graduating from Governors' State University in University Park, Illinois in December, 2024 with a Master's Degree in Medical Informatics, Prasanna

has continued his education through the OPT program for F-1 international students, and has been employed by a tech company on a full-time position.

2. Plaintiff NISHA SHIVRAMBHAI CHAUDHARI ("Nisha") is also a native and citizen of India who currently resides in Illinois. She is scheduled to graduate from the College of Engineering at the University of Illinois at Chicago with a Masters degree in Chemical Engineering in May, 2025.

3. Defendant KRISTI NOEM is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

4. Defendant TODD LYONS is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of Department of Homeland Security. He is sued in his official capacity.

5. Defendant DEPARTMENT OF HOMELAND SECURITY ("DHS") is a federal government agency. DHS is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including ICE.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant), and 5 U.S.C. § 702 (right of review).

7. Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

8. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 as Plaintiffs both reside in the Northern District of Illinois.

**INTRODUCTION**

9. In or about the first weeks of April, 2025, the United States Department of Homeland Security ("DHS") unilaterally terminated the F-1 student status of hundreds of students throughout the United States under the SEVIS [Student and Exchange Visitor] system, for unknown and unspecified reasons.[1]  Plaintiffs are two of these students.

10. Prasanna and Nisha are both F-1 graduate students in graduate programs, and both have pursued those programes with the expectation of participating in OPT training.

11. For noncitizen students, they are "subject to an array of regulations." *Id*. (citing 8 C.F.R. § 213.2(f)).  "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)).  Students may also participate Optional Practical Training ('OPT') "which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*., (*quoting* 8 C.F.R. § 214.2(f)(1)(ii)).  OPT usually occurs at the end of the

---

[1] *See, e.g.*, https://www.cbsnews.com/chicago/news/university-of-chicago-students-visas-revoked/Elizabeth Román, "5 Umass Amherst students have visas revoked," NHPR (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," CBS8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," Boston.com (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/;Binkley, Collin, Annie Ma, and Makiya Seminera, "Federal officials are quietly terminating the legal residency of some international college students", Associated Press, April 4, 2025, https://apnews.com/article/college-international-student-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a; Kaleem, Jaweed, "Trump administration cancels dozens of international student visas at University of California, Stanford", Los Angeles Times, April 5, 2025, https://www.latimes.com/california/story/2025-04-05/trump-administration-cancels-international-student-visas-university-of-california-stanford

completion of the studies; and permits work for up to three years for STEM-degreed students like Plaintiffs.

12. In May, 2024, PRASANNA completed all coursework toward a Master Degree in Medical Informatics from Governor's State University ("GSU"), which is located in Chicago's south suburban area in University Park, Illinois. GSU recommended Optional Practical Training, the post-graduate work authorization directly related to his field, for Prasanna, and USCIS approved an Employment Authorization Document (EAD) for nearly a year, on July 31, 2024, valid through July 17, 2025. Prasanna has been offered employment in his field as a Quality Data Governance Coordinator, with Whidbey Health, and is scheduled for onboarding that position **on May 1, 2025**, and to begin employment **on May 12, 2025**. He was also accepted into the UI Health's Certified Nursing Assistant Training Program on March 24, 2025, a ten-week training course which includes financial support.

13. In the normal course of things, Prasanna would apply to the Government for reauthorization of his EAD for the remaining two years of his OPT program, and would work in his new position or another position through a total of three years following his graduation.

14. Since Nisha is also scheduled to graduate in May, 2025, she has also planned to seek to participate in OPT.

15. In the normal course of things, Nisha would apply to the Government for reauthorization of her EAD to begin the three years of her OPT program, and would seek work in a position utilizing her highly desirable Masters degree in chemical engineering.

16. Rather than the expected and intended path Prasanna and Nisha were following, both students have received notice that their F-1 student status SEVIS has been terminated.

17. SEVIS "is the web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information regarding… Student and Exchange Visitor Program (SEVP)-certified schools… (and) F-1 and M-1 students studying in the United States…."[2]

18. On April 4, 2025, Prasanna received notification from GSU that his F-1 student status in the SEVIS system had been terminated. A copy of an email from the DSO reflecting GSU's communications with SEVIS representatives is attached to Vemula's Declaration as Exhibit 2.

19. Prasanna has not been informed by the Government why his SEVIS status was terminated. He has speculated that the basis for the termination was an arrest for retail theft, which case was stricken by the Court and dismissed in March, 2024. No finding of guilt was made, and no criminal conviction was entered. See Vemula Decl., Exhibit 1. However, he has no way of knowing whether that arrest is even relevant to the termination of his SEVIS status.

20. Prasanna is not guilty of the "commission of (any) crimes of violence and for which a sentence of more than one year imprisonment may be imposed.", 8 CFR 214.1(g) (setting forth regulatory grounds for condition of a student nonimmigrant's admission and continued stay in the United States). Thus, his F-1 student status should remain in effect.

21. Nonetheless, Prasanna's status in the shows as "Terminated", which means that he is not only ineligible to work under his current work authorization in his OPT program which begins on May 1, 2025, but that he is also no longer in valid F-1 student status.

22. Nisha attended Louisiana State University in 2017 as an F-1 student. Due to poor academic performance she returned to India in 2018. On June 6, 2018 she attempted return to the US

---

[2] See, https://studyinthestates.dhs.gov/site/about-sevis.

on her F-1 visa. She was refused admission under F-1 status because her I-20 - a official documentation issued by her university to verify her eligibility to attend class - had been terminated, presumably due to her prior poor academic performance. CBP officials permitted her to withdraw her application for admission to the U.S., and cancelled her visa; and she traveled back to India.

23. She completed a Bachelors degree in Chemical Engineering in 2022, in India. Nisha then applied for a program to earn a Masters of Science in Chemical Engineering at the University of Illinois at Chicago, retrieved a new F-1 visa and has, since 2023, been a full-time student in good standing at University of Illinois at Chicago, and has exhibted academic excellence in her studies.

24. Ms. Chaudhari has no criminal arrests, has never committed any visa fraud and is otherwise presently maintaining lawful nonimmigrant status, and has at all times maintained lawful nonimmigrant status.

25. A single arrest for retail theft does not constitute a basis for termination of Prasanna's OPT authorization, according to the government's own regulations.

26. Prasanna's and Nisha's dream of finishing their OPT program and working in the U.S. is now in severe jeopardy because of the Government's decision to abruptly, and without legal cause, terminate their F-1 student status under the SEVIS system without affirmatively notifying them or even their school in advance, and without providing them with any opportunity to contest such termination. Such conduct is a blatant violation of Plaintiffs' right to due process of law.

27. This news is shocking and bewildering to Prasanna and Nisha because they have not violated any rules governing the maintenance of their F-1 student status, such as "fail[ing] to maintain a full course of study[.]" See 8 C.F.R. § 214.2(f)(5)(iv).

28. In light of DHS's unilateral termination of Plaintiffs' OPT authorization, the termination of their student status in the SEVIS system, and without the benefit of notice or explanation, Plaintiffs can no longer conduct any work under OPT, they are without lawful nonimmigrant F-1 status in the United States, and therefore, faces imminent arrest, detention and removal by ICE. Not being able to work through participation in the OPT program has also interfered with a core component of their post-graduate training, crucial for their future employment and career.

29. At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). "At the core of these due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard. *See, e.g., Kwong Hai Chew v. Colding*, 344 U.S. 590, 596–98, 73 S.Ct. 472, 477–78, 97 L.Ed. 576 (1953); *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.1991)(citing cases); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here.

30. For the agency-initiated termination of OPT authorization F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See, Jie Fang v. Director U.S. Immigration & Customs Enforcement,* 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student

status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status under the SEVIS system; nonetheless, that has been the effect of the termination of his visa.

31. DHS's own policy guidance confirms that "[v]isa revocation is *not*, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[3] Rather, if the visa is revoked, *the student is permitted to pursue his course of study in school*, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[4] If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of a F-1 *visa*, DHS must assert grounds under and comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

32. The revocation of Plaintiffs' visas and the termination of their SEVIS status has instead terminated their pursuit of their course of study, through the OPT program in which they were participating with third-party employers.

---

[3] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[4] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

## FACTS

### Background on F-1 Student Visa and Status

33. Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the U.S. Department of State. Then, once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

34. An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. 19. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advise, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

35. For noncitizen students, they are "subject to an array of regulations." *Id*. (citing 8 C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)). Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative

work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). CPT usually occurs during the course of study and before its completion.

36. "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*., (quoting 8 C.F.R. § 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies; and permits work for up to three years for STEM-degreed students like Plaintiff.

37. "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. § 214.2(f)(5)(iv)). "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of study without the approval of the DSO **or otherwise fails to maintain status**' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv))(*emphasis supplied*).

38. Under the regulation, DSO's at schools must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). SEVIS termination is governed by SEVP policy and regulations.

39. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status."

40. For the first, a failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

41. Regarding the "crime of violence" category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses and civil judgments do not meet this threshold for termination based on criminal history.

42. For the second, an agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

43. Accordingly, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in

the SEVIS system. If an F-1 visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of visa revocation *after* a student has been admitted into the United States because the student is permitted to continue the authorized course of study. *See*, ICE Policy Guidance 1004-04–Visa Revocations (June 7, 2010).[5]

44. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[6]

45. DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting", despite that there has been no actual violation of the student's F-1 status. If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

46. While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. See 8 U.S.C. § 1227(a)(1)(B); U.S.C. §

---

[5] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[6] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation

1201(i). The Immigration Judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstates to F-1 student status. See 8 C.F.R. § 1003.18(d)(ii)(B). Only when a final removal order is entered would the status be lost.

47. The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system, because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

48. Students who have failed to maintain F-1 status may seek reinstatement of their status, with a re-activated CEVIS registration. Under regulations, "a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances;' 2) does 'not have a record of repeated or willful violations of Service regulations'; 3) is pursuing or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that the violation of status resulted from circumstances beyond the student's control, or that the violation relates to a reduction in the student's course load that would have otherwise been permitted if authorized by the school and that failure to approve reinstatement would result in extreme hardship to the student." *Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

**Termination of Plaintiffs' F-1 Student Visa and Status**

49. As noted above, Prasanna received an email from his University, notifying him that the U.S. State Department has revoked his visa, Exhibit 1.

50. Prasanna immediately contacted his student advisor at Governor's State University to determine his status with the University; and on April 10, 2025, GSU's International Student Advisor told him orally, by telephone, that his "F-1 status was terminated in SEVIS by the system" because of a "criminal records check and/or that his VISA had been revoked." He was also advised that all employment authorization, on- or off-campus, ends immediately, and was advised to cease any employment immediately.

51. On April 16th, 2025, Nisha met with her International student advisor with UIC, who informed her that her visa had been revoked; and asked if she had received any notification from the U.S. Government to that effect. She had not, and so informed the advisor, who then suggested leaving the country as soon as possible, before risking arrest and detention.

52. Neither Nishi, her advisor nor UIC had been made aware of any reason for the revocation of her visa, nor the termination of her status in the SEVIS system; and the school has not been contacted by any Government officials about her status, other than through the SEVIS system. The advisor only became aware of the issue while conducting random checks of the SEVIS system of other UIC students, after a student sought a travel signature from the University, and it became aware of that student's SEVIS termination.

53. Nisha's advisor informed her that UIC cannot issue a new I-20 for her, a document that is required for her filing for my Employment Authorization (EAD) card.

54. For the U.S. Government, the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility. *See*, *e.g.*, U.S. Department of State, Foreign Affairs Manual, 9 FAM 402.5-49B ("…the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility.").

55. Prasanna had previously been arrested and charged with a minor violation, as set forth above in paragraph 19. He has not committed any crime, and has not been convicted of any crime. The matter concluded with what was explicitly, by court order, a "dismissal" and was disposed of and dismissed by the Court.

56. Plaintiffs have complied with all rules and regulations pertaining to someone with student status. Neither Plaintiff has been told and does not know why their visa was revoked, nor why their SEVIS record (F-1 student status) was terminated.

57. The termination of Plaintiffs' student status in SEVIS has put their education, research, and career trajectory at risk. In particular, they are no longer authorized to work in the capacity of an OPT employee, which has terminated their ability to work, and will severely affect their ability to complete their studies.

58. This termination may also put Prasanna and Nisha in immediate detention and deportation—an outcome other students have already faced.[7]

**CLAIMS FOR RELIEF**

**COUNT 1**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

---

[7] *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025); *Liu v. Noem*, 25-cv-000133 (D. NH., Apr. 8, 2025.

**(Unlawful F-1 Student Status Termination)**

59. The foregoing allegations are realleged and incorporated herein.

60. The United States Constitution requires notice and a meaningful opportunity to be heard. *See Capric v. Ashcroft,* 355 F.3d 1075, 1087 (7th Cir. 2004)("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir.2000). And these rights apply in a deportation proceeding. *Podio v. INS*, 153 F.3d 506, 509 (7th Cir.1998) (citations omitted). Due process requires that an applicant receive a full and fair hearing which provides a meaningful opportunity to be heard.")

61. Defendants terminated Plaintiffs' F-1 student status under the SEVIS system without (i) notifying them about this termination decision, (ii) failing to provide Plaintiffs with an individualized hearing before an impartial adjudicator, and (iii) failing to provide Plaintiffs with adverse evidence and an opportunity to confront and respond to such evidence.

62. Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.

**COUNT 2**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS AGENCY ACTION**

**(Unlawful F-1 Student Status Termination)**

63. The foregoing allegations are realleged and incorporated herein.

64. The APA empowers this Court to set aside agency action that is arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A), (C).

65. Agency action that violates constitutional rights must also be set aside. 5 U.S.C. § 706(2)(B).

66. An action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

67. Defendants' action in terminating Plaintiffs' status in the SEVIS system is arbitrary and capricious.

68. Defendants' termination of Plaintiffs' F-1 student status under the SEVIS system is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision making process, and is therefore a final order").

69. Defendants' termination violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

70. Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS record or status based simply on revocation of a visa.

71. Moreover, in making its finding that Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiffs' individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determinations.

Defendants' lack of consideration of any relevant facts specific to Plaintiffs before making their determinations was arbitrary and capricious and in violation of the APA.

### COUNT 3
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

**(Unlawful Detention)**

72. The foregoing allegations are realleged and incorporated herein.

73. The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

74. In light of the unlawful termination of Plaintiffs' SEVIS record and F-1 student status, Plaintiffs are at risk of abrupt detention without prior notice. Plaintiffs are graduate students who have not committed a crime punishable by the withdrawal of SEVIS status, have not committed any act to violate their student F-1 status, and have ensured that they complied with all rules. *See, Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for Plaintiffs' immigration detention, preventing them from pursuing their studies.

### RELIEF SOUGHT

Plaintiffs seek that Court enter an order of judgment in Plaintiffs' favor and against Defendants, as follows:

(1) Assume jurisdiction over this matter;

(2) Declare that Defendants' termination of Plaintiffs' F-1 student status under the SEVIS system without affording them sufficient notice and opportunity to be heard violated Plaintiffs' Fifth Amendment due process rights and the APA (including under 8 C.F.R. § 214.1(d));

(3) Issue an injunction requiring Defendants to provide adequate individualized proceedings before an impartial adjudicator for Plaintiffs in which they will be entitled to review any adverse evidence and respond to such evidence prior to any determination about whether Plaintiffs' F-1 student status should be terminated;

(4) Order Defendants to reinstate Plaintiffs' valid F-1 student status under the SEVIS system immediately at their respective universities;

(5) Enjoin Defendants from detaining or taking steps to detaining Plaintiffs, pending a resolution of the instant case;

(6) Award attorney's fees and costs pursuant to the Equal Access to Justice Act; and

(7) Order any further relief this Court deems just and proper.

    Respectfully submitted,

    /s/ *Jeffrey Grant Brown*
    Jeffrey Grant Brown
    Attorney for Plaintiffs

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd. #107
Chicago, Illinois  60604
(312) 789-9700
Illinois ARDC #6194262
Attorney for Plaintiff