IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRASANNA KUMAR VEMULA, and <br> NISHA SHIVRAMBHAI CHAUDHARI, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary, Department of <br> Homeland Security; TODD LYONS, Acting <br> Director of the Immigration and Customs <br> Enforcement, each in their official capacity and <br> not individually; and UNITED STATES <br> DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Case No. 25-cv-04561 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

INTRODUCTION

Pursuant to Counts 1 and 2 of Plaintiffs' Complaint for Declaratory and Injunctive Relief, Plaintiffs, PRASANNA KUMAR VEMULA and NISHA SHIVRAMBHAI CHAUDHARI, request the entry of a Temporary Restraining Order to (i) enjoin Defendants from terminating their F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

Plaintiff Prasanna Kumar Vemula ("Prasanna") is a native of India. Since graduating from DePaul University in Chicago, Illinois in December, 2024 with a Master's Degree in Information Systems, Prasanna has continued his education through the OPT program for F-1 international students, and has been employed by a tech company in Illinois on an internship.

Plaintiff Nisha Sivrambhai Chaudhari ("Nisha") is also a native of India. She is scheduled to graduate from the College of Engineering at the University of Illinois at Chicago with a Masters degree in Chemical Engineering in May, 2025.

Neither Plaintiff has committed any "crimes of violence for which a sentence of more than one year imprisonment may be imposed.", 8 CFR 214.1(g), nor has they shown any violence in the United States or elsewhere. Both Plaintiffs came to the United States as F-1 international students with F-1 immigration status, to study in graduate programs with area universities. However, both Plaintiffs' dream of finishing their graduate program's OPT training is now in severe jeopardy because the Department of Homeland Security ("DHS") terminated their F-1 student status in the SEVIS system[1] without first notifying them or even their school, in the first weeks of April, 2025. "Duration of status" is defined in the Code of Federal Regulations as "the time during which an F–1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies…", 8 C.F.R. § 214.2(f)(5)(i). Plaintiffs are not alone with respect to this abrupt termination of student status. Hundreds of foreign students in the United States were recently notified by their schools that their F-1 student status was

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding:" F-1 "students studying in the United States[.]" https://studyinthestates.dhs.gov/site/about-sevis.

terminated for unspecified reason[2]; and dozens of courts have now entered restraining orders

---

[2] Sara Machi, Elyssa Kaufman, "7 University of Chicago students' visas revoked", April 9, 2025, https://www.cbsnews.com/chicago/news/university-of-chicago-students-visas-revoked/ ; Elizabeth Román, "5 Umass Amherst students have visas revoked," NHPR (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," CBS8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional- deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3 ; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," Boston.com (Apr. 6, 2025), https://www.boston.com/news/local- news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

against the Government, ordering it to reinstate students in the SEVIS system.[3]

Because of this termination, Plaintiffs face imminent and irreparable harm; they both face

---

[3] *See, e.g.*, *Doe v. Trump*, 1:25-cv-04188, N.D. Ill., requiring the Government to reinstate the Plaintiffs there in the SEVIS system, and protecting them from deportation during the 14 day period the TRO is in effect; *Bejugam v. Lyons*, 2:23-cv-0057, ECF No. 17, (N.D. Alabama, Southern Division, April 17, 2025) (extending the court's TRO of April 11, 2025 enjoining defendant Lyons from effectuating ICE's termination of plaintiff's SEVIS record and F-1 status through April 22, 2025, the date of the scheduled evidentiary hearing in the case); *Chatwani v. Noem*, 1:25-cv-04024, ECF No. 10, (N.D. Illinois, April 16, 2025) (temporarily ordering that plaintiff may not be moved anywhere, outside of the court's jurisdiction nor may he be detained for immigration purposes in any way, shape or form); *Chen, et al., v. Noem*, et al., 3:25-cv-03292, ECF No. 18 (N.D. Cal., April 18, 2025) (temporarily enjoining defendants for a period of 14 days from arresting and incarcerating plaintiffs, transferring plaintiffs outside the jurisdiction of the judicial district, and imposing any legal effect that otherwise may be caused by the termination of plaintiffs' SEVIS statuses or the potential unlawful revocation of their F-1 visas); *Doe 1, et al., v. Bondi,* et al., 1:25-cv-01998, ECF No. 23, (N.D. Georgia, Atlanta Division, April 18, 2025) (granting TRO for a period of 14 days and ordering defendants to reinstate plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025); *Doe 1 v. Trump,* et al., 2:25-cv-02825, ECF No. 13, D.N.J., April 18, 2025 (granting the TRO and ordering defendants to restore plaintiff's SEVIS record and status and set aside defendants' termination of plaintiff's SEVIS status and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of defendants' decision to terminate plaintiff's SEVIS records, including arresting, detaining, or removing plaintiff from the court's jurisdiction, or ordering the same, without providing adequate notice to the court and to plaintiff's counsel, as well as sufficient time to contest any such enforcement action); *Doe v. Noem*, et al., 2:25-cv-01103, ECF No. 13, E.D. Cal., April 17, 2025 (granting the TRO and temporarily enjoining defendants from terminating plaintiff's SEVIS record; requiring defendants to set aside their SEVIS record termination determination; prohibiting defendants from detaining or removing plaintiff based on the SEVIS termination; and enjoining defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of the termination of his SEVIS record); *Doe v. Noem*, et al., 2:25-cv-00633, ECF No. 16, W.D. Washington, April 14, 2025 (granting the TRO and ordering defendants to restore the plaintiff's F-1 student record and I-20 in SEVIS and to set aside plaintiff's April 7, 2025 F-1 student record and I-20 termination, and enjoining defendants from terminating plaintiff's student record and I-20 in SEVIS absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f), from detaining or transferring plaintiff out of the court's jurisdiction, or ordering the detention or transfer of plaintiff out of the court's jurisdiction, as a result of the termination of his F-1 student record or I-20 in SEVIS on April 7, 2025, and from initiating removal proceedings against or deporting plaintiff on the basis of the April 7, 2025 termination of his F-1 student record or I-20 in SEVIS).

potential immigration detention and deportation, because they are no longer authorized to study or to work in their graduate program in any capacity, which puts them in financial and career jeopardy as their work in whatever OPT training might follow graduation must cease. Moreover, the abrupt termination of F-1 student status in the SEVIS system may prevent Nisha from participating in scheduled graduation in June, 2025. Plaintiffs likely accrue unlawful presence daily as they is out of immigration status, which significantly affects their chance of reinstating F-1 student status in the future. *See* 8 C.F.R. § 214.2 (allowing that USCIS may consider granting reinstatement if the student has not been out of status for more than 5 months).

      To clarify, Plaintiffs do not challenge the revocation of Plaintiffs' F-1 visa in this case. Instead, Plaintiffs bring this lawsuit to challenge DHS's unlawful termination of their F-1 student *status* in the SEVIS system.[4] As a bedrock principle, the United States Constitution requires notice and a meaningful opportunity to be heard. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). "At the core of these due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard. *See, e.g., Kwong Hai Chew v. Colding,* 344 U.S. 590, 596–98, 73 S.Ct. 472, 477–78, 97 L.Ed. 576 (1953); *Kaczmarczyk v. INS*, 933 F.2d 588, 596 (7th Cir.1991)(citing cases); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here with respect to the termination of Plaintiffs' student status, warranting immediate relief under Count 1 of Plaintiffs'

---

[4] There is a difference between a F-1 student visa and F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country.

Complaint.

Further, as to Count 2 of Plaintiffs' Complaint, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status under the SEVIS system and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. Yet they have been terminated in the SEVIS system. For the agency-initiated termination of F-1 student status in the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See Jie Fang*, 935 F.3d at 185 n.100. Pursuant to 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status under the SEVIS system when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. None of those things have happened here. Moreover, though Plaintiffs' F-1 visas have been revoked, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status under the SEVIS system. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[5] Rather, if the visa is revoked, the student is permitted to pursue his or her course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016- 03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[6] If DHS wishes to terminate F-1 student status under the

---

[5] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[6] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation

SEVIS system after (or independent of) revocation of an F-1 visa, DHS must assert grounds under and comply with 8 C.F.R. § 214.1(d). *See Jia Fang*, 935 F.3d at 185 n.100. DHS has not done so here.

Because of these imminent and real harms, Plaintiffs request that the Court grant a temporary restraining order to (i) enjoin Defendants from terminating their F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to immediately set aside their termination determination and to reinstate him in the SEVIS system, so that they may continue to study and to work for the duration of their full permitted OPT post-graduate work authorization as F-1 students.

FACTUAL BACKGROUND

In May, 2024, Prasanna completed all coursework toward a Master Degree in Medical Informatics from Governor's State University ("GSU"). GSU recommended Optional Practical Training, the post-graduate work authorization available to international students with F-1 status like Plaintiffs, which is directly related to their field. USCIS approved an Employment Authorization Document (EAD) for Prasanna for nearly a year, on July 31, 2024, valid through July 17, 2025. Prasanna has been offered employment in his field as a Quality Data Governance Coordinator, with Whidbey Health, and is scheduled for onboarding that position **on May 1, 2025**, and to begin employment **on May 12, 2025**. He was also accepted into the UI Health's Certified Nursing Assistant Training Program on March 24, 2025, a ten-week training course.

Nisha is scheduled to graduate from the College of Engineering at the University of Illinois at Chicago with a Masters degree in Chemical Engineering in May, 2025. She is also scheduled to graduate in May, 2025, and she has also planned to seek to participate in

OPT.

In April, 2025, the United States Department of Homeland Security ("DHS") unilaterally terminated Plaintiffs' F-1 student status. Both plaintiffs were advised of their termination in the SEVIS system by their international student advisors at their respective universities. Neither has received any direct communication from the U.S, Government informing them of their terminations.

However, neither Plaintiff is guilty of the "commission of (any) crimes of violence and for which a sentence of more than one year imprisonment may be imposed.", 8 CFR 214.1(g) (setting forth regulatory grounds for condition of a student nonimmigrant's admission and continued stay in the United States). Prasanna was arrested last year, in 2024, for a minor retail theft offense, which was dismissed by the court, with no conviction and no finding of any guilt. Getting arrested is NOT a basis to terminate the F-1 student status of a student under the SEVIS system, according to the government's own regulations; neither is a conviction for a non-violent crime with a sentence of less than one year of imprisonment.

Plaintiffs have complied with all rules and regulations as an F-1 student. Neither Plaintiff has been told and do not know why their visas were revoked, nor why their SEVIS records (F-1 student status) were terminated. But this termination has put Plaintiffs' education, research, and career trajectory at risk. In particular, they are no longer authorized to work, which will severely affect their ability to complete OPT training. This termination may also put them in immigration detention and deportation—an outcome other students have already faced. *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025).

Moreover, the reinstatement of Plaintiffs' F-1 student status is critical as it can serve as a

form of relief and a defense in potential removal proceedings.

STANDARD OF REVIEW

The party seeking a temporary restraining order, or preliminary relief must show that: 1) it has some likelihood of success on the merits; 2) it has no adequate remedy at law; and, 3) without relief it will suffer irreparable harm. *Planned Parenthood of Ind. and Ky., Inc. v. Comm'r of Ind. State Dep't of Health,* 896 F.3d 809, 816 (7th Cir. 2018). If the movant meets these requirements, the court must then weigh the harm the movant will suffer without an injunction against the harm the non-movant will suffer if an injunction is issued. The court makes this assessment using a sliding scale. The more likely the movant is to win, the less heavily need the balance of harm weigh in its favor. The less likely the movant is to win, the more the balance must weigh in its favor. Finally, the court must also determine whether the injunction is in the public interest, taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018); *Elim Romanian Pentecostal Church v. Pritzker*, 613 F. Supp. 3d 1102, 1107–08 (N.D. Ill.), *aff'd*, 962 F.3d 341 (7th Cir. 2020).

These factors are satisfied here.

**ARGUMENT**

**THE TERMINATION OF PLAINTIFF'S F-1 STUDENT STATUS WAS UNLAWFUL**

As a preliminary matter, the SEVIS record is the definitive authority for eligibility for a student visa, both under federal regulations and as a practical matter. The Government's Foreign Affairs Manual recites that "the electronic SEVIS record…is the definitive record" of Plaintiffs' F-1 status. See, 9 FAM 402.5-49B, Complaint, ¶ 45. The Code of Federal Regulations likewise looks to SEVIS records as a condition for an international student's status. 8 CFR 214.2(f)(1)(i)

provides for admission requirements to the U.S. by international students. It provides:

> Eligibility for admission. A nonimmigrant student may be admitted into the United States in nonimmigrant status under section 101(a)(15)(F) of the Act, if:
>
> -214.2(f)(1)(i)(A) The student presents a Form I-20 or successor form issued in the student's name by a school *certified by the Student and Exchange Visitor Program*.

(*Emphasis supplied*.) In turn, the proof that a school is SEVP certified is that the I-20 is issued *within the SEVIS system. Id.* Thus, the Government and Universities alike treat the SEVIS registration of a student as the evidence and record determining student F-1 status.

The Government has apparently taken the position recently in cases similar to this that the SEVIS system does *not* define a student's F-1 status; and has even filed a sworn affidavit from a Government employee, swearing that "Terminating a record in SEVIS *does not* terminate an individual's nonimmigrant status in the United States." *See, Nali v. Noem, et al*, 1:25-cv-03969, Doc.t #: 19-1 at ¶ 12. That statement is literally incredible, *e.g.,* <u>not</u> credible. It defies reality, and flatly contradicts the Government's position in countless other cases, including a notice issued a mere four days ago, in which the Government has announced its intention to deny an H-1 B application, because:

> USCIS records show that the beneficiary attended University as an F-1 nonimmigrant from August 7, 2022 to May 11, 2024 (redacted). The beneficiary was approved for post-completion Optional Practical Training (OPT) from July 10, 2024 to July 9, 2025 (redacted). However, records show that the Department of State revoked the beneficiary's F-1 visa on March 20, 2025. **According to the beneficiary's SEVIS record** (redacted) **their F-1 nonimmigrant status was terminated** on April 10, 2025 because of the

criminal records check and the revocation of their F-1 visa."

See, Exhibit 2, April 18, 2025, USCIS Notice Of Intent To Deny.

Thus, the evidence plainly shows that SEVIS is the definitive test of an F-1 student's status, and the Government knows that, acknowledges that, and uses SEVIS records to determine that status.

Defendants terminated Plaintiffs' F-1 student status in this case, and it did so very directly through the SEVIS system. *See*, Exhibit 3, SEVIS record. Termination of Plaintiffs' F-1 student status using the SEVIS system in this case was unlawful for two independent reasons: First, it violates the Due Process Clause of the Fifth Amendment under the Constitution (Count 1); and second, it violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory scheme at 8 C.F.R. § 214.1(d).

THE TERMINATION VIOLATES THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE (COUNT 1)

Defendants' termination of Plaintiffs' F-1 student status in the SEVIS system straightforwardly violates the Fifth Amendment's Due Process Clause. As an admitted noncitizen student in the United States, Plaintiff has due process rights. *Kaczmarczyk v. INS*, 933 F.2d 588, 595-96 (7th Cir.1991)(citing cases)("…aliens are entitled as a constitutional matter to what has come to be known as a "meaningful opportunity to be heard…")("due process 'applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (*Zadvydas v. Davis*), 533 U.S. 678, 693 (2001)). The basic principle of a noncitizen's due process rights is "the right to notice and the nature of the charges and a meaningful opportunity to be heard." *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997).

However, in this case, Defendants broke these promises. Defendants did not provide any prior notice or explanation to Plaintiffs or their schools about the basis for their decision to terminate Plaintiffs' F-1 student status. Without knowing why Plaintiffs' F-1 student status was terminated, Plaintiffs learned about this termination only because their respective schools apparently discovered it during the school's inspection of SEVIS records.

As importantly, Defendants did not comply with the requirements of providing adequate explanation and a meaningful opportunity to respond. Defendants provided a vague and ambiguous explanation that Plaintiffs' F-1 student visa was terminated. See, Declarations of Plaintiffs, attached. However, the explanation is inadequate to be consistent with the requirements under the Due Process Clause. Plaintiffs have not committed any "crimes of violence for which a sentence of more than one year imprisonment may be imposed.", 8 CFR 214.1(g); and they have maintained their student status. Thus, a criminal record check or failure to maintain student status could not serve as the basis for terminating their F-1 student status. Accordingly, Defendants' failure to provide notice, adequate explanations, and meaningful opportunity to terminate Plaintiffs' F-1 student status is in violation of the Due Process Clause.

<u>The Termination Violates the Administrative Procedure Act (Count 2)</u>

Defendants' termination of Plaintiffs' F-1 student status under the SEVIS system also violates the Administrative Procedure Act (APA). Defendants' termination of Plaintiffs' F-1 student status is a final agency action for which this Court has jurisdiction to review. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order").

On the substantive issue, Defendants had no statutory or regulatory authority to terminate

Plaintiffs' F-1 student status. Critically, DHS's ability "to terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang,* 935 F.3d at 185 n.100. Under this regulation, DHS can terminate student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. Accordingly, the revocation of a visa does not constitute a failure to maintain status and cannot, therefore, serve as a basis for termination of F-1 student status. If a visa is revoked before the student's arrival in the United States, the student may not enter, and his SEVIS record of F-1 student status is terminated.

However, the SEVIS record of F-1 student status may not be terminated as a result of visa revocation after a student has been admitted into the United States **because the student is permitted to continue the authorized course of study**. *See,* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[7] DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *Id*. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record of F-1 student status is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. See, Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[8] Importantly for Plaintiffs. notwithstanding the revocation of their visas, they should lawfully be permitted to remain in the U.S. for more than two more years as an F-1 student in good status, under STEM OPT. But the

---

[7] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[8] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation

revocation of their visa has apparently caused the SEVIS system to cancel their F-1 status, and that is wholly improper.

Plaintiffs have maintained their F-1 student status. Under the regulation, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." However, none of these violations occurred in either Plaintiffs' case. Plaintiffs have not committed or been convicted of any crime, much less a crime of violence with a potential sentence of more than a year. They have not engaged in unauthorized employment. Nor have they provided any false information to DHS.

Because Defendants unlawfully terminated Plaintiffs' F-1 student status without any statutory or regulatory authority, Defendants' termination should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including 8 C.F.R. § 214.1(d).

At bottom, Defendants' termination of Plaintiffs' F-1 student status violates the Constitution and the APA. Defendants provided no notice, adequate explanation, or meaningful opportunity for Plaintiffs to respond. Nor do Defendants have statutory or regulatory authority to terminate Plaintiffs' F-1 student status, including under 8 C.F.R. § 214.1(d). The termination must be set aside and enjoined.

## THE EQUITIES STRONGLY FAVOR AN INJUNCTION

Plaintiffs will suffer irreparable injury if Defendants' termination determinations are not set aside and enjoined. First, Plaintiffs face possible detention and deportation because of the unlawful presence stemming from this termination. "Deportation is a drastic measure, often amounting to lifelong banishment or exile." *Sessions v. Dimaya*, 584 U.S. 148, 157, 138 S. Ct. 1204, 1213, 200 L. Ed. 2d 549 (2018) (internal quotations omitted). See Decl. Of Mekarthi, ¶ 8 ("I now face the risk of detention and deportation from the United States, because of my terminated student status."). Relatedly, this Court's order of setting aside Defendants' termination of Plaintiffs' F-1 student status can provide a critical form of relief and defense in removal proceedings. Plaintiffs have shown a likelihood of success on the merits of their claims, that DHS violated the APA when it terminated F-1 student status in the SEVIS system, and that it has provided them literally no process prior to the termination of status. Based on the record before the court, Plaintiffs are likely to show that DHS's termination of F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706(2)(A).

Second, this termination will result "in the loss 'of all that makes life worth living'" for Plaintiffs' academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). *See,* Decl. Of Vemula, Chaudhari, reflecting the possibility of abandoning years of post-graduate study, the associated financial expenses, and their hopes and dreams, along with great emotional harm.

Third, this termination will result in extreme financial and academic hardship to Plaintiffs, since they can no longer perform any work under the OPT program, and can no longer

be employed in the positions in which they have worked, nor in any other employment in the U.S.. Not being able to work or participate in the program is severely distressing, as it directly impacts their experience and learning, and employability.

Fourth, this termination may result in the status of unlawful presence, which is a critical factor for Plaintiffs' future reinstatement of F-1 student status. See 8 C.F.R. § 214.2 ("USCIS may consider granting the request (by a student for reinstatement) if the student: (A) Has not been out of status for more than 5 months at the time of filing the request for reinstatement…").

In contrast, Defendants have advanced no substantial interest in terminating Plaintiffs' F-1 student status. Indeed, granting a temporary restraining order would merely maintain the status quo that has been in place for over two years of Plaintiffs' studies in the United States during his graduate program studies at DePaul University.

Defendants also have no legitimate interest in enforcing this unconstitutional and unlawful termination of F-1 student status, or in exceeding Defendants' statutory and regulatory authority by terminating Plaintiffs' F-1 student status in a manner that is contrary to federal law, and "the public interest is harmed by the enforcement of [termination determination] repugnant to the United States Constitution." *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 3898544, at *6 (D.N.H. Aug. 22, 2024).

CONCLUSION

The balance of the hardships and whether injunctive relief is in the public interest both weigh in Plaintiffs' favor. Thus, the balance of equities and the public interest both strongly favor a temporary restraining order. The Court should issue a temporary restraining order (i)

enjoining Defendants from terminating Plaintiffs' F-1 student status under the SEVIS system, and (ii) requiring Defendants to revoke and set aside their termination determination.

DATED: April 25, 2025

                                  Respectfully submitted,

                                  /s/ *Jeffrey Grant Brown*
                                  Jeffrey Grant Brown
                                  Attorney for Plaintiffs

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd. #107
Chicago, Illinois 60604
(312) 789-9700
Illinois ARDC #6194262
Attorney for Plaintiffs