## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PRASANNA KUMAR VEMULA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:25-cv-04561 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| KRISTI NOEM, in her official capacity as | ) | |
| Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Prasanna Kumar Vemula ("Prasanna") and Nisha Shivrambhai ("Nisha"), (together, "Plaintiffs"), brought a Complaint for injunctive and declaratory relief ("Complaint") against Kristi Noem, Secretary of the Department of Homeland Security, Todd Lyons, Director of the Immigration and Customs Enforcement ("ICE"), and the United States Department of Homeland Security ("DHS"), (altogether "Defendants"), in relation to the termination of Plaintiffs' Student and Exchange Visitor Information Systems ("SEVIS") records. Plaintiffs seek an order declaring Defendants' unilateral termination of Plaintiffs' F-1 student status, without notice and an opportunity to be heard, violated Plaintiffs' rights under the Administrative Procedure Act ("APA") (Count I) and Fifth Amendment due process rights (Count II and III). Plaintiffs also ask the Court to issue an injunction requiring Defendants to reinstate Plaintiffs' valid F-1 statuses under the SEVIS system so they may resume temporary employment, or Optional Practical Training ("OPT"). Plaintiffs further seek an order requiring Defendants to provide full individualized proceedings before an impartial adjudicator where Plaintiffs will be entitled to respond to any adverse evidence. Finally, Plaintiffs seek an order enjoining Defendants from detaining Plaintiffs pending resolution of this case. Defendants move to dismiss the claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons

set forth below, the Court denies Defendants' Motion to Dismiss Count I and grants Defendants' Motion to Dismiss Counts II and III, with prejudice and without prejudice, respectively [27].

**BACKGROUND**

### A. Statutory and Regulatory Background

International students can enroll in government-approved academic institutions and enter the United States on an F-1 visa issued by the U.S. Department of State. *See* 8 U.S.C. § 1101(a)(15)(F). Once students are granted F-1 student status, they are permitted to remain in the United States for the duration of status as long as they maintain requirements of their visa classification—most importantly, maintaining a full course of study or approved practical training. *See* 8 C.F.R. § 214.2(f); under 8 C.F.R. § 213.2(f). DHS's Student and Exchange Visitor Program ("SEVP") is in charge of administering the F-1 student program and tracking information on students in F-1 student status. Each school that educates F-1 students has a Designated School Official ("DSO") who monitors, advises, and oversees the students attending their institution. SEVIS is the centralized database that tracks international students' compliance with their F-1 status.[1] DHS uses SEVIS to monitor student status and track compliance with the terms of the student's status. Only schools and DHS may access SEVIS records.

The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." For the first, to maintain lawful status, an F-1 visa student may not engage in certain specified activity, including engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.2(e)–(g). "Criminal activity" is narrowly defined to mean a "conviction ... for a crime of violence for which a sentence of more than one year imprisonment may

---

[1] *About SEVIS*, Dep't of Homeland Sec., https://studyinthestates.dhs.gov/site/about-sevis (last visited November 17, 2025).

be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). Minor misdemeanor offenses and civil judgments do not meet this threshold for termination based on criminal history. For the second, an agency-initiated termination of F-1 student status, DHS's ability to terminate F-1 student status is limited by 8 C.F.R. § 214.1(d). Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. Outside of these enumerated reasons, DHS cannot unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). The revocation of a visa by the State Department also does not constitute a failure to maintain status and visa revocation is not, by itself, cause for termination of a student's SEVIS record.[2]

### B. Factual Background

#### 1. *Prasanna*

Prasanna is a native and citizen of India who currently resides in Illinois. In May of 2024, Prasanna completed all coursework toward a master's degree in medical informatics from Governor's State University ("GSU"), which is located in University Park, Illinois. GSU recommended Prassana for the OPT program, which consists of temporary employment for students under F1 status "directly related to the student's major area of study." 8 C.F.R. § 214.2(f) (1)(ii). OPT usually occurs at the end of the completion of the studies and permits work for up to three years for science, technology, engineering, and mathematics ("STEM")-degreed students. Prasanna enrolled in the program and the United States Citizenship and Immigration Services ("USCIS") approved an Employment

---

[2] *See*, Immigration Custom Enforcement ("ICE") Policy Guidance 1004-04–Visa Revocations (June 7, 2010); See Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).

Authorization Document (EAD) for nearly a year, on July 31, 2024, valid through July 17, 2025. Prasanna has been offered employment in his field as a Quality Data Governance Coordinator, with Whidbey Health, and was scheduled to begin employment on May 12, 2025.[3]  He was also accepted into University of Illinois Health's ("UI") Certified Nursing Assistant Training Program on March 24, 2025, a ten-week training course with included financial support.

In the normal course of things, Prasanna would apply for reauthorization of his EAD for the remaining two years of his OPT program and would work in his new position or another position for a total of three years following his graduation.  On April 4, 2025, however, Prasanna received notification from GSU that his F-1 student status in the SEVIS system had been terminated.  Prasanna immediately contacted his student advisor at GSU to determine his status with the university; and on April 10, 2025, GSU's International Student Advisor told him orally, by telephone, that his "F-1 status was terminated in SEVIS by the system" because of a "criminal records check and/or that his VISA had been revoked."  He was also advised that all employment authorization, on- or off-campus, ends immediately and to cease any employment.

Prasanna still has not been informed by the Government and has no way of determining why his SEVIS status was terminated.  He speculates that the basis for the termination was an arrest and charge for retail theft, that was dismissed in March of 2024.  No finding of guilt was made, and no criminal conviction was entered.  *See* Vemula Decl.  Prasanna is not guilty of the "commission of (any) crimes of violence and for which a sentence of more than one year imprisonment may be imposed. 8 CFR 214.1(g).  Accordingly, Prassan's F-1 student status should have remained in effect since a single arrest for retail theft does not constitute a basis for termination of Prasanna's OPT authorization,

---

[3] At the time of this Order, the Court is not aware if Prasanna is employed with Whidbey Health or if he enrolled in the Nursing Assistant Training Program at UI.  Plaintiffs have had ample opportunity to update the Court on their status and can and should have supplemented the pleadings to verify such status.

according to the government's own regulations. Nonetheless, at the time of Plaintiffs' filing, Prasanna's status in SEVIS was terminated, revoking his F-1 Student status and making him ineligible to work in the OPT program.

### 2. Nisha

Nisha is also a native and citizen of India who currently resides in Illinois. Nisha attended Louisiana State University in 2017 as an F-1 student. Due to poor academic performance, she returned to India in 2018. On June 6, 2018, she attempted to return to the U.S. on her F-1 visa. She was refused admission under F-1 status because the official document issued by her university to verify her eligibility to attend class, the"I-20," had been terminated, which Nisha presumes was due to her prior poor academic performance. Customs and Border Patrol officials permitted her to withdraw her application for admission to the U.S. and cancelled her visa. Nisha traveled back to India where she completed a bachelor's degree in chemical engineering in 2022. Nisha then applied for a program to earn a master's of science in chemical engineering at the University of Illinois at Chicago ("UIC"), retrieved a new F-1 visa and has, since 2023, been a full-time student in good standing at UIC. She was scheduled to graduate from her program in May of 2025 with plans to participate in the OPT program.[4]

On April 16th, 2025, Nisha met with her international student advisor with UIC, who informed her that her visa had been revoked; and asked if she had received any notification from the U.S. Government to that effect. She had not, and so informed the advisor, who then suggested she leave the country as soon as possible, before risking arrest and detention. Neither Nisha, her advisor nor UIC had been made aware of any reason for the revocation of her visa, nor the termination of

---

[4] At the time of this Order, the Court is not aware if Nisha completed her studies and if she is currently participating in the OTP program. Plaintiffs have had ample opportunity to update the Court on their status and can and should have supplemented the pleadings to verify such status.

her status in the SEVIS system; and the school has not been contacted by any Government officials about her status, other than through the SEVIS system. The advisor only became aware of the issue while conducting random checks of the SEVIS system of other UIC students, after a student sought a travel signature from the university, and it became aware of that student's SEVIS termination. Nisha's advisor then informed her that UIC could not issue a new I-20 for her, the document required for her EAD card.

Nisha has no criminal arrests, has never committed any visa fraud, and has at all times maintained lawful nonimmigrant status. In the normal course of things, Nisha would apply to the Government for reauthorization of her EAD to begin the three years of her OPT program, after which she would seek work in the field of her training, chemical engineering. Nonetheless, at the time of Plaintiffs' filing, Nisha's status in SEVIS was terminated, revoking her F-1 Student status, making her ineligible to work in the OPT program, and otherwise nullifying any of her other plans.

On April 25, 2025, Plaintiffs filed this lawsuit against Defendants.

## LEGAL STANDARD

### A. Motion To Dismiss For Lack Of Subject Matter Jurisdiction

A Rule 12(b)(1) motion challenges federal jurisdiction, and the complaining party bears the burden of establishing the elements necessary for subject matter jurisdiction, including standing to seek relief. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *International Union of Operating Eng'rs v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020). Under Rule 12(b)(1), the Court accepts all well-pled factual allegations as true and construes all reasonable inferences in the plaintiff's favor when a defendant has facially attacked standing. *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 2 F.4th 1002, 1007 (7th Cir. 2021).

### B. Motion To Dismiss For Failure To State A Claim

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, a court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

### I.    Ripeness of Claims

As a threshold matter, Defendant argues that Plaintiffs' case is moot because the central relief complained of, the "reactivation" of the SEVIS record related to the Plaintiffs, has now been accomplished. [5] (Dkt. 18 at*7.) Specifically, Defendants argue the Court should dismiss the Complaint because the "reactivation" was retroactive such that there was no gap in the Plaintiffs' SEVIS status and because there are no plans to "re-terminate"[6] those records in the foreseeable future.

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Under the voluntary cessation doctrine, an exception to mootness, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw*

---

[5] On April 25, 2025, the Executive Branch restored SEVIS records of international students whose records were previously terminated. *See generally*: *Administration is restoring international students' legal statuses while ICE develops 'framework' for visa terminations*, NBC News, (last visited November 17, 2025). As it is the Court's understanding, based on the pleadings, Plaintiffs' SEVIS records have not been restored.

[6] The Court notes Defendants' inconsistent use of "reactivate" and "re-terminate," and their failure to provide Plaintiffs with concrete evidence of their specific status, outside of a form declaration, calls into question their central assertion that the Plaintiff's F-1 statuses records were never "terminated."

*Env't* Servs. *(TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, (1982)). The standard for determining whether a case has been mooted by the defendant's voluntary cessation of the complained-of conduct is "stringent." *Id.* Courts are understandably skeptical when a defendant seeks dismissal of a claim as moot on the grounds that it has changed its practice while reserving the right to go back to its old ways after the lawsuit is dismissed. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [they] left off, repeating this cycle until [they] achieve all their unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Accordingly, voluntary cessation does not moot a conflict unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth,* 528 U.S. at 189 (internal citations omitted). The burden of proving that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Id.* at 170.

Defendants argue that the same conduct is not likely to recur given the new SEVIS termination policy and ICE's provision of letters to affected students such as the Plaintiffs. (Dkt. 28 at *8-9.) Amazingly, Defendants argue that the Court should not accept Plaintiff's "conclusory" assertion that the Government terminated their F-1 status, because Plaintiffs "conflate a database entry with someone's lawful (or unlawful) immigration status.[7]" (*See* Dkt. 33 at *3.) Defendants ultimately bring the incongruous argument, that because Plaintiff's never lost their F-1 status, and because their initial SEVIS termination is now defunct, they were never subject to any sort of a reinstatement—instead, they experienced a "reactivation" of records and never accrued any unemployment days in SEVIS that would put their OTP status in jeopardy. (*Id.* at *4-5.)

---

[7] Considering the contradicting positions and the constantly changing positions of the administration and the Defendant, DHS, it should not surprise anyone that the Plaintiffs' position is based on shifting sand.

Plaintiffs, by contrast, challenge Defendants' threshold assertion that their SEVIS statuses were reinstated or "reactivated" as Defendants claim. "The Government won't let Plaintiff confirm whether such a fact - reinstatement - is true, because it won't let them, the DSOs, or the Court see the actual SEVIS record which supposedly reflects this reinstatement." (Dkt. 32 at *6.) Consequently, Plaintiffs have no evidence of their current SEVIS status, yet alone any evidence that Defendants "reactivated" Plaintiffs' status in the system. *Id.* Plaintiffs also believe they can overcome any mootness concerns because Defendants' conduct is likely to recur since Defendants have expressly preserved, and indeed enhanced, their right to unlawfully terminate Plaintiffs' status again, under new DHS policy, *SEVIS Notice – Policy Regarding Termination of Records*, (Dkt. 19, Ex. 1), after their supposed "cessation" of their practice of unilaterally terminating SEVIS status without reason. (*See* Dkt. 32 at *8.)

Applying the stringent standard of the voluntary cessation doctrine and drawing all reasonable inferences in favor of the Plaintiffs, the Court determines this case is not moot. As an initial matter, Defendants' contention that terminating Plaintiffs' SEVIS record does not affect their F-1 statuses has been rejected by numerous courts. E.g. *Student Doe #1 v. Trump*, No. 25 C 4188, 2025 WL 1341711, at *12 (N.D. Ill. May 8, 2025)(Ellis, J.)(rejecting defendants' argument and stating that "[t]he State Department, DHS, and sponsoring schools all follow the agencies' guiding sources and consider the termination of a student's SEVIS record equivalent to the termination of that student's F-1 status."). When schools or ICE terminate a student's SEVIS record, the student is unauthorized to work, unauthorized to stay in the United States, and loses F-2 status for any dependent. The Court cannot blindly accept Defendants' current characterization of SEVIS terminations and ignore the weight of evidence to the contrary. Importantly, without any evidence of reason for the initial terminations, evidence of Plaintiff's currents status, or evidence substantiating Defendants' assertion that Plaintiffs' accounts were "reactivated," the Court will not dismiss Plaintiffs' claims as moot.

Even in the alternative, if the Court were to accept Defendants' explanation, their mootness defense, still fails. Defendants' assertion that they are unlikely to engage in the conduct at issue is insufficient to warrant a dismissal where it has bolstered its ability to unilaterally engage in unlawful terminations, rather than create safeguards to avoid the challenged unlawful conduct. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 235 (2024) (determining defendant did not meet its "formidable burden" of establishing it could not reasonably be expected to resume its challenged conduct in the future). Given the totality of the circumstances, Defendants have not borne their burden of demonstrating that the challenged conduct could not reasonably be expected to recur. The Court therefore will not dismiss the Complaint based on mootness.

## II.    APA Claims (Count I)

Having determined that Plaintiff's claims are ripe for purposes of judicial review, the Court now addresses the merits of Plaintiffs' claims.

### 1.    *Relevant Authority*

Defendants argue Plaintiffs' APA claims should be dismissed because the Privacy Act—not the APA—controls agencies' procedures vis-à-vis amendment of governmental records over individuals. (Dkt. 18 at *12.)

The APA waives sovereign immunity for federal district court actions by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. "That waiver, however, is subject to three limitations: (1) the plaintiff must 'seek[] relief other than monetary damages'; (2) the plaintiff must have 'no other adequate remedy'; and (3) the plaintiff's action must not be 'expressly or impliedly forbid[den] by 'any other statute.'" *Madan B K et al., v. Noem et al.,* No. 1:25-cv-419, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025) (quoting 5 U.S.C. §§ 702, 704).

Defendants contend that Plaintiffs' APA claim is subject to, and precluded by, the third limitation—namely that the Privacy Act forbids foreign nationals from filing suit challenging

government records. (*See* Dkt. 18 at *13). Plaintiffs, on the other hand, emphasize that they have not filed suit to review their SEVIS records under the Privacy Act, but instead, are expressly challenging Defendants' unappealable decision to terminate their F-1 student status under the APA. (Dkt. 32 at *10.) Importantly, Plaintiffs emphasize that courts have held that the Privacy Act does not bar an international student plaintiff's claim under the APA. *Id.*

The Court agrees with Plaintiffs that their claims are not barred by the Privacy Act. As recently as last year, the Supreme Court found that Congress did not intend the Privacy Act be the exclusive source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA. *See Dept. of Agriculture Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42 (2024). In other words, *Kirtz* recognized that Congress did not intend the Privacy Act to limit plaintiffs from pursuing relief under other statutes for the mishandling of government records. Federal district courts have, appropriately followed suit. *See e.g., Yunwei Chen v. Noem, et al.,* No. 1:25-cv-00733-TWP-MG, 2025 WL 1163653, at *4-5 (S.D. Ind. Apr. 21, 2025); *Madan B K et al.,* 2025 WL 1171572, at *5. The Court, therefore, finds that the Privacy Act does not prohibit this Court's review of Plaintiffs' APA claims.[8]

   2. *"Final Agency Action" Under the APA*

Because the Court determined Plaintiffs' APA claims are not barred by the Privacy Act, Defendants, in the alternative, argue there is no requisite "final agency action" here for judicial review. (Dkt. 18 at *13.) The APA does "allow any person 'adversely affected or aggrieved' by agency action

---

[8] To the extent Defendants contend that Plaintiff's APA claim is subject to the second limitation—that Plaintiffs have no other adequate remedy of law—and that Plaintiffs can seek relief under the Privacy Act, this argument likewise fails. Plaintiffs are not requesting or seeking to correct information contained in government records or challenging an unauthorized disclosure of confidential information—all of which could be appropriately sought under the Privacy Act. Rather, Plaintiffs here are challenging the complete termination of their SEVIS records. *See Madan B K et al.,* 2025 WL 1171572, at *5; *Doe v. Noem,* No. 2:25-cv-01103, 2025 WL 1134977, at *4 (E.D. Cal. Apr. 17, 2025) (rejecting second limitation argument).

to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701–06). An action is final under the APA only if (1) it marks "the consummation of the agency's decision-making process" and (2) is "one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

Defendants argue there is no "final agency action" in this matter where, as here, the relevant SEVIS entry (which has now been changed multiple times) is merely one step in a multi-step, multi-agency process. (Dkt. 18 at *3). Defendants also submitted evidence that the Plaintiffs have not lost their F-1 statuses, through the declaration of Andre Watson ("Watson Declaration"), Assistant Director of Homeland Security Investigations, stating that ICE "re-activated SEVIS records for plaintiffs" who met certain parameters and that the agency "has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record[s]." (Dkt. 18-3 at *¶ 5-6.) Finally, Defendants argue Plaintiffs have ignored other steps in the administrative process they could utilize if they lost their F-1 status (which Defendants maintain they have not), prior to bringing suit. (*See* Dkt. 18 at *14.)

Plaintiffs, by contrast, argue that the initial termination of their SEVIS statuses qualifies as a "final agency action" because such action determines a right or obligation by ending the Plaintiffs' legal status in the United States and creating adverse legal consequences, and note that Defendants' general declarations provide no concrete assurances to the Plaintiffs that their specific records were restored. (*See* Dkt. 32 at *12.) Regarding Defendants' assertion that Plaintiffs could have used administrative procedures to address their revocation, Plaintiffs' state that, because neither immigration judges nor the Board of Immigration Appeals have authority to review SEVIS terminations or reinstatement requests, there is no "mechanism to review the propriety" of the original termination. *Id.*

At this stage, Plaintiffs have sufficiently alleged that their actual F-1 statuses were terminated along with their SEVIS records and that such terminations were final agency actions. Defendants have not provided evidence, specific to Plaintiffs, detailing their F-1 and SEVIS statuses. The Watson Declaration on which Defendants rely, does not mention them by name, is not directed to them, and vaguely asserts their statuses were restored *if* they "met the parameters" outlined in the form declaration. (*See* Dkt. 18-3 at *¶ 5.) These generalized assurances do not suffice. Regarding the finality of Defendants' actions, Courts have held that termination of the students" F-1 status marked the consummation of the agency's decision-making process, and that the termination order determines a right or obligation because it "end[s] the student's legal status in the United States," providing grounds for the plaintiffs to be subject to arrest, deportation, and accrual of unlawful presence. *See Chen*, 2025 WL 1163653 at *7*; see Jie Fang*, 935 F.3d at 180; *See Doe v. Noem*, No. 2:25-cv-633-DGE, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025). Regarding Plaintiffs' ability to address the termination of their SEVIS records through administrative procedures, courts have agreed that even if a student were to pursue SEVIS reinstatement, no "mechanism to review the propriety" of the original termination exists. *See Jie Fang*, 935 F.3d at 182; *see also Doe,* 2025 WL 1141279, at *3 (noting that "[i]f USCIS does not reinstate the student, the student may not appeal the decision."). Considering the facts in the light most favorable to the Plaintiffs, the Court agrees with the Plaintiffs and the overwhelming majority of case law to determine Defendants' decision to terminate Plaintiffs' F-1 statuses is a reviewable, final agency action.

### 3. *Merits of APA Claims*

The Court now turns to the merits of Plaintiffs' APA claims. Plaintiffs allege there was no statutory or regulatory basis for the termination of their F-1 statuses, that Plaintiffs have complied with all rules and regulations pertaining to someone with student status, and that Plaintiffs have not been afforded an opportunity to confront and respond to any adverse evidence that led to the initial

terminations. (*See* Dkt. 1 at *15-16.) An F-1 visa holder's status may be appropriately subject to termination for three separate reasons: (1) revocation of a waiver; (2) introduction of a private bill to confer permanent residence on the nonimmigrant; or (3) pursuant to notification in the Federal Register, due to national security, diplomatic, or public safety. *See* 8 C.F.R. § 214.1(d).

The record before the Court contains no facts supporting the termination of Plaintiff's SEVIS record for any of these stated reasons. Defendants' purported reason for termination of Plaintiff's SEVIS record, as set forth in the Watson Affidavit, merely states that "[b]eginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases." (Dkt. 18-3 at *2.) Such an assertion is not specific to Plaintiffs and contradicts Plaintiffs' own specific assertions that they were not subject to termination under the statute for criminal reasons. (Dkt. 1 at *5-6.) At this stage, Plaintiffs have sufficiently alleged that Defendants did not have a legitimate basis to terminate Plaintiffs' F-1 statuses under 8 C.F.R. § 214.1(d). Accordingly, the Court denies Defendants' Motion to Dismiss Plaintiffs' APA claims.

## III. Due Process Claims (Counts II and III)

Defendants argue Plaintiffs' due process claims challenging the termination of their F-1 statuses are meritless because the Plaintiffs do not have liberty or property interests in their SEVIS records. (Dkt. 18 at *11.) The Seventh Circuit has explained, "[i]n order to make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings." *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004). In immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief, *see Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1264 (7th Cir.1985), and the denial of such relief therefore cannot implicate due process. *Ashcroft*, 363 F.3d at 653.

Defendants emphasize that Plaintiffs lack any sort of property interest in SEVIS records. (Dkt. 18 at *11.) They further argue that the SEVIS database is an administrative tool that does not

affect the lawfulness of someone's nonimmigrant status. (*Id.* at 12.) Moreover, they contend, even if there were a property interest in SEVIS records, the administrative processes USCIS affords complainants if they actually lost their F-1 statuses, would satisfy the Fifth Amendment. (*Id.*) Plaintiffs, in response, state that the property and liberty interests at issue are not in the SEVIS records but in Plaintiffs' property and liberty interests in remaining in compliant F-1 status and remaining in the United States. (*See* Dkt. 32 at *13-14.) They also argue the line of cases holding that there is no liberty or property interest when relief by the Government is purely discretionary should not apply, since the revocation of Plaintiffs' status is not purely discretionary – but instead, relies on rules and regulations under which Plaintiff's F-1 status can be revoked, and none of the appropriate grounds were used here. (*Id.* at *12-14.)

Despite the Parties' conflicting characterizations of the property interest at issue, the Court dismisses the Plaintiffs' F-1 status claims, with prejudice, because even accepting Plaintiffs' assertion that the liberty interest at issue is their lawful visa status, as numerous cases in this Circuit affirm, there is no constitutionally protected interest in either obtaining or continuing to possess a visa. *See*, e.g., *Musunuru v. Lynch*, 831 F.3d 880, 891 (7th Cir. 2016) (holding plaintiff did not have a constitutionally-protected property interest in the continued validity of his visa); *Nasir v. U.S. Dep't of State*, 749 F. Supp. 3d 938, 944 (N.D. Ill. 2024) (Valdez, J.) (finding no due process interest in visa application dependent on USCIS's discretion).

### 1. *Unlawful Detention Claims*

Defendants also argue Plaintiffs' due process claims challenging unlawful detention should be dismissed because they are entirely speculative and thus unripe. (Dkt. 18 at *10.) A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or that may not occur at all." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Friends of the Earth*, 528 U.S. at 180. As the Seventh Circuit has put it, "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

Defendants assert Plaintiffs' claims challenging unlawful detention—that are explicitly based on the assertion that they may, at some uncertain point in the future, be placed into removal proceedings and then be detained by ICE—should be dismissed because they are entirely speculative. (Dkt. 18 at *10.) Defendants emphasize that Plaintiffs are not currently (nor have they ever been) detained or within ICE's custody such that they might each have ripe claims for unlawful detention. (*Id.*) Plaintiffs do not address Defendants' assertion that their claims are speculative or unripe because the Plaintiffs were never arrested or detained by ICE (eliminating the requisite element of any potential unlawful detention claim), but do argue that dozens of unlawful arrests and detentions taken by the Government in recent months and weeks pose an imminent threat to Plaintiffs and any one of the international students who have been caught up in the Government's "Student Criminal Alien Initiative." (*See* Dkt 32 at *15.)

While the Court acknowledges Plaintiffs would have a liberty interest at stake if they were to be detained, in the present instance, that is not the case. Accordingly, the Court dismisses the detention claims without prejudice, because the Court acknowledges evolving immigration policy and procedures signal that Plaintiffs' liberty interests can and will be affected if their statuses are not confirmed or further stripped, making them vulnerable to loss of liberty in the future.

**CONCLUSION**

For these reasons, Defendants' Motion to Dismiss is denied as to Count I and granted as to Counts II and III. Defendants are required to provide the Plaintiffs with their relevant SEVIS records within fourteen (14) days to allow Plaintiffs to confirm whether the fact of retroactive reinstatement

or "reactivation" is true. Plaintiffs are then granted leave to amend their Complaint within forty-five (45) days if they have a good faith basis for believing they can cure the pleading deficiencies identified in this Opinion.

**IT IS SO ORDERED.**

Date: 12/9/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge